And when that case is called would the attorneys who are going to orally argue come up to the podium and introduce yourselves to the court. Thank you. Please call the case. The attorney for the appellant is who? William Delaney, your honor. Good morning. Good morning, Mr. Delaney. And who will be speaking for the appellant? Jeff Coleman, good morning, your honors. Mr. Coleman? Okay, both of you will have 15 minutes to orally argue. Mr. Delaney, I'm sure you'll want to reserve from that time sufficient opportunity for you to rebut. Certainly, your honor. Okay, very good. Mr. Delaney, you may proceed. Thank you, your honor.  Good morning. My name is William J. Delaney, and I'm here on behalf of the appellant, William L. Gunlicks, the founder and majority shareholder of Founding Partners Capital Management Corporation. To paraphrase the Supreme Court in Loyola Academy, to affirm the dismissal with prejudice in this matter would lead to an absurd, unjust consequence. The case at issue here that is primary is Loyola Academy. The primary question before this court is, were there no facts in existence that could sustain the claims pled in the Fourth and Fifth Amended Complaints? Why the Fifth? I'm sorry, your honor? Why the Fifth Amended Complaints? Well, in the response to the dismissal of the Fourth Amended Complaint, we proposed the cure, one of the elements of the Loyola Academy case. But didn't Judge Griffin, when he dismissed the Third Amended Complaint, say, I'll give you one more try to properly plead a clause of action? So that when you filed your Fourth Amended Complaint, which was really your fifth attempt to pass muster, he ruled on the Fourth Amended Complaint, and that's the one that he dismissed with prejudice. So why would we consider the Fifth Proposed Amended Complaint that Judge Griffin never really ruled on? Well, I think there's a number of reasons. And first, your honor, the issue comes down to the particularity and the heightened pleading standard that Judge Griffin sought. In Loyola Academy, it makes clear that there are four factors to consider in whether or not to grant leave to a man. Those factors are, primary number one, would it cure the alleged defect? Okay, but again, we've all read the briefs and the complaint and the order of Judge Griffin dismissing the Fourth Amended Complaint. So let's focus on the Fourth Amended Complaint and his statement that I'll give you one more try. I mean, how many times, I think he even stated in his dismissal order of your Fourth Amended Complaint, which was your fifth attempt, that how much is enough? The commercial calendar at that time had anywhere between 400 and 450 cases pending at each call. How much time does a judge need to spend on a complaint and do justice to the remaining cases on his call? I think that was the issue with Judge Griffin. This is the fifth time we've tried to get you going, and in his judgment, you failed. So that's what I'd like to focus on. What was it about the Fourth Amended Complaint that you think he was wrong in dismissing? Well, Judge, as we articulate in our brief, the Fourth Amended Complaint on its own should have sufficiently stated a claim. The issue, and it was highlighted in the estate of Powell, as we cite to in our brief, that but for failure to protect the interests of the client is sufficient to show proximate cause. And how did you plead that? Your Honor, I think we made very clear that the Compliance Counsel, the engaged Compliance Counsel on behalf of Mr. Gumlich individually, and mind you, the founding partners represented Mr. Gumlich in the 2007 SEC case and was engaged thereafter as Compliance Counsel. Their job was to ensure compliance to prevent the SEC from commencing a new prosecution. Mr. Delaney? Yes, Your Honor. I just wanted to ask you, in the Powell case, I think the Court found on count two of the Powell case that the reversal of the dismissal was warranted because of the fact that the pleading specified that but for the failure to appoint a guardian, the plaintiff would have received a settlement. So there was something specific that was alleged in the complaint that would have, that they claimed would have been the result. Sure. Here in the Fourth Amendment and the Fifth, we haven't, but primarily the Fourth, I don't see an allegation that but for the alleged failures above, there would have been, number one, no SEC investigation or action that resulted in 2009 or the consent judgment that resulted. It just says that as a proximate cause of these failures, the SEC brought the 2009 action. That's a conclusory statement, but it doesn't tell me that the SEC action in 2009 didn't result from all sorts of other things other than, perhaps, a failure to follow the requisite portion of the 2007 cease and desist order. And you haven't alleged in there. We don't know what was in the SEC complaint according to your complaint. It's an excellent question, Your Honor, and I think you bring up a very important point regarding this consent judgment. What should be stunning to this Court is that not once, not twice, but five separate times in defendants' brief, they make a material misrepresentation of fact, and they say that Mr. Gumlich's admitted to intentionally and willfully violating SEC laws. That is a stunning, stunning misrepresentation. There was a consent judgment, and the first sentence of the consent decree states that without admission of guilt or liability, there is a settlement. And the defendants in this case have argued that that was an intention. That was simply not the case. Was the consent judgment attached to the complaint? To the underlying complaint, our complaint? Yes. No. So how can Judge Griffin discern from the face of the pleadings, which is the standard on a 2-615 motion to dismiss, how would the trial court discern what the basis of the 2007 cease and desist order are, what the basis of the 2009 complaint are, and what the basis for the 2010? Is it a 2010 judgment? It was a 2009. 2009. Well, the case was brought in 2009. It was settled in 2009. Okay. They're not in the allegations of the complaint. Judge, specifically as highlighted in our reply brief, the Fourth Amendment complaint states, they did not but should have conducted formal compliance review or audits of William L. Gumlich's and his conduct during the representations. Paragraph 58, they failed to provide legal advice concerning major compliance issues for William L. Gumlich. They were hired compliance counsel. In the like manner as the attorneys in Powell had an obligation to advise of the probate rights and interests to protect the interests of the party in Powell, they were hired to protect the interests of the individual William L. Gumlich. But you have to allege under Powell that there would have been an impact. And the compliance, and this goes to another issue in this case, which is a key issue. The compliance job, what the attorneys were hired to do, is detailed in the file. In this case, early on in the case, we issued a demand under the statute, under 735 ILCS 5-8-2005, to turn over the entire file. The issue that Judge Griffin struggled with here was particularity. Particularity that we were eager to take on. The issue of whether the facts exist. Why was there a request to stay the motion to compel the client file production that was made by the defense, by Mr. Gumlich? I think that it was not a request to stay. I think that the language was at the time of the dismissal of the Third Amendment, the parties were not at issue. And my co-counsel, Mr. Daratini, simply indicated that fact on the record. At that moment in time, the parties were not at issue. It was not a request to stay. So did the defendant make further requests prior to the Fourth Amendment complaint for the discovery? The request had been ongoing. We did not issue formal discovery because we never had a case management scheduler leave to issue formal discovery in any of the earlier cases. But more importantly, we had made a statutory demand. According to Illinois law, pursuant to statute, the file is owned by the party. We exercised our rights under the statute and demanded the file. And the particularity question was in front of all of the different judges. Judge Griffin was so interested and took note of the fact that the file needed to be seized and protected that he issued a protective order. He went so extreme as to instruct the defendants, Mayor Brown, to hold and segregate and protect the file during the issues pending. Well, my question is, did you renew, did Mr. Gunlich's renew his request for the information contained in, whether it was founding partner's client file or Mr. Gunlich's client file, did he renew the request for the production of that material if he believed he needed it for the Fourth Amendment complaint? He stood on his request from the initial filing of the 224 motion for pretrial discussion throughout the case. The request was made. It was briefed. The idea that Mr. Gunlich somehow walked away from that request is simply factually incorrect. The reality of the situation was the court dismissed the Third Amendment complaint. So at that snapshot in time, the parties were not at issue. And that's what was captured in the record at that moment. There was no waiver of rights. The reality still remains. The demand under the Illinois statute was made. The entire file was requested. And as we sit here today, it has not been tendered. Your Honor, the Supreme Court in Loyola makes clear that the issue before the amendment is furtherance to the end of justice. And as the case law in Beecham v. Walker makes very clear, the standard is that no set of facts exist. The interesting thing here is, is that defendants have successfully played a game of hide the ball here by denying access to the file. We're being asked to plead a malpractice case under a heightened particularity without access to the file. This would be the equivalent of pleading a medical malpractice without ever being able to review the doctor's notes in the file. We have sought this information since the beginning of the case. The record is crystal clear that we have made a proper statutory demand, which I would submit holds more legal consequence than discovery issues, because the discovery would have been in the 201K battle back and forth as to the issues of relevance until the case went forward. We took every effort to acquire the entire file, and in the debates and in the record, it is crystal clear that the particularity sought and the facts that Judge Griffin struggled with are within the file. So the question of whether or not the facts exist is the issue for this Court. And the answer has never been denied. The issue of whether or not Loyola Academy controls is the case that carries the day here. There are four standards. The reason the Fifth Amendment complaint, to go back to Your Honor's question, matters is because it articulates a cure. We articulate the cure in our report. Perhaps it articulates a cure after the fact. When the fact is, according to Judge Griffin's rulings, is that after he dismissed the Third Amendment complaint, he said, I'll give you one more chance, okay? And the one more chance to my reckoning would be the Fourth Amendment complaint, not the Fifth Amendment complaint tendered on a motion for reconsideration. In other words, he was telling you, get it right one more time. Otherwise, it's going to be dismissed because as a practical matter, he can't spend the rest of his career helping or trying to figure out whether you or the plaintiff can put together a complaint that will pass must. Now, on page 5 of his order, with respect to the discovery issue, he writes, the Court notes that plaintiff's counsel on April 12, 2012, on the hearing on the motion to dismiss the Third Amendment complaint, in response to the Court's question regarding the pending motion to compel discovery on the purported client file, requested that a ruling on the motion to compel be postponed because the motion to compel would be moot until the parties were at issue. And he cites to the transcript. So he's citing to the transcript where he's saying the plaintiff said, don't rule on my motion to compel turning over the client file. Now, was he wrong? Well, as I already articulated and as we make clear in our reply brief, the issue was whether or not the parties were at issue at that particular moment. I think that the question of whether we stood down on our request is the issue, and the fact of the matter is we never did. Your Honor, the issues come down to, are there facts in existence? The discovery issue was paramount to this case since early on. The facts in existence in the file are there. The file has never been turned over. And the Court struggled with the particularity issue. The Court never said that there are no facts in existence. The Court struggled with the particularity issue. And as I articulated at the beginning of this argument, as Loyola made clear, anything other would lead to an absurd, unjust result. The issue is furthering the ends of justice. And at this point, Your Honor, I'd like to reserve the remainder of my time for rebuttal. That is noted. Thank you, sir. Thank you. Mr. Coleman. Your Honors, may it please the Court. In the time permitted today, I'd like to answer your specific questions and address three issues. The judge's decision to deny leave to file a Fifth Amendment complaint. Judge Griffin's decision to stay briefing and decision on the discovery issue. And third, the merits of Judge Griffin's decision granting our motion to dismiss the Fourth Amendment complaint with prejudice. In sum, as we explain in our brief, Mr. Gunlich's is asking this Court to make radical departures from well-established Illinois law, giving trial judges broad discretion when to accept amended pleadings, when to stay discovery, and how to properly manage their dockets. And Mr. Gunlich's is also asking this Court to ignore long-settled requirements that plaintiffs in legal malpractice cases must plead facts, not conclusions, facts, establishing that but for the lawyer's purported negligence, the client would have prevailed in the underlying matter. There was a proposed Fifth Amendment complaint brought with the motion to consider, correct? Correct. And is that what we're testing? Is it the Fifth Amendment complaint that we're testing, or is it the Fourth? It's the Fourth, Your Honor. And with all due respect to counsel? So if, in fact, the Fifth Amendment complaint, which it proposed, meets muster, the appellant still loses, in your opinion, because the Fourth didn't? Yes, but the Fifth doesn't meet muster. Indeed, in their opening brief in this Court at page 11. If there were sufficient facts in the Fifth, shouldn't the appellant prevail here? No, Your Honor. Why? Because, first of all, the Loyola Academy test does not even apply here. Counsel referred to Loyola Academy as the primary case. Loyola Academy applies when plaintiffs are seeking leave to amend under Rule 616A, where they're freely given leave to amend subject to the Loyola Academy requirements. Under Rule 616C, which is applicable here, the only time you can amend after judgment is entered, which happened here in October of 2012, Judge Griffin entered judgment in the case dismissing with prejudice. The only time you can seek leave to amend after judgment is entered is to conform the pleadings to the proof under Rule 616C. So that's the end of that issue. If, as in the Compton case that we cite in our brief, there this Court said 616C applies, but let's look at the Loyola Academy standards anyway. Four-part test. Number one, they're not timely. They're not timely. Judge Griffin said we'll give you one last try, and then they wait until after he rules on the next motion to dismiss to say, oh, now we want to file again. So they're not timely. Did they have opportunities to amend in the past? They had two years, four tries to amend. So they had plenty of opportunities. Loyola Academy, by the way, is the only case I've found where an appellate court reverses for failure to permit an amendment. There may be others. It's the only one I've seen. And Loyola Academy, it was failure to amend once. The circuit court judge said we won't let you amend once. Here, four amended complaints over more than two years. They had plenty of time to do this and failed. And the fifth amended complaint, by their own admission in their brief, adds no new facts, simply changes the verbiage of their proximate cause allegations. That's at page 11. The defense counsel cites to Rucklich v. Julius Schmidt. It's a 1988 case where the courts can still vacate the judgment. This is a case where there's a dismissal of the case with prejudice, and the court went back, and I believe the appellate court said the trial court was wrong to begin with. So they could have cured the error by going back, vacating the judgment, and allowing the next amendment. Courts have that power, as long as there's a timely motion to reconsider. Courts have that power. The abuse of discretion test applies here. You have to find that Judge Griffin manifestly abused his discretion when he denied leave to file a fifth amended complaint. It just cannot be, as Judge Pierce indicated, that judges have to let fifth, sixth, seventh, eighth, ninth amended complaints. So there was no abuse of discretion on deny leave to amend. With regard to discovery, the standard is also abuse of discretion. Here, plaintiffs never, I underline the word never, said they needed discovery to respond to our motions to dismiss. Did they ever file a discovery request? No. Was there ever a 201K conference? No. What they did do was serve a notice to produce the file of founding partners, the corporate entity, and Mr. Gunlich's, to be fair, said those are my files too. We notified the receiver, who under the court order in Florida possesses the attorney-client privilege.  The day that Judge Griffin dismissed the third amended complaint, he did indeed, and this is in the record at supplemental appendix. They didn't put it in the record before the court. It's supplemental appendix 36. That's when Mr. Gunlich's counsel told Judge Griffin you can postpone briefing on the discovery motion until we're at issue. So that issue was waived. They did raise it again in September of 2012. Judge Griffin said let's wait until we're at issue, and then three weeks later, he granted the motion to dismiss the fourth amended complaint. But I emphasize, they never said they needed discovery to respond to a motion to dismiss. No abuse of discretion there. With regard to the merits of this case, the judge's decision to dismiss the fourth amended complaint with prejudice, there is case after case after case in this court, this very court. The Serafin case, Clare Associates, Estate of Powell, Perm Hall, all setting forth the pertinent test. Has the plaintiff alleged facts, not conclusions, facts to demonstrate that but for the negligence of his lawyer, he would have prevailed in the underlying matter? Let me give you a few examples here. Judge Griffin did, Justice Lew, the SEC complaint and the SEC order are in the record. We made them part of the record. So the SEC complaint is... But counsel, are we permitted to take judicial notice of this on a 2615 motion to dismiss? Yes, absolutely. I know it sounds a little comical to cite this case, but the Puba decision of the Illinois Supreme Court that we cite in our brief says that it is proper on a 2615 motion to consider the allegations in the complaint and any matters that a court can properly take judicial notice of. Here we asked Judge Griffin to take judicial notice of the SEC complaint and the SEC order. Never, ever, ever did Mr. Gundlachs object to that. And so when Judge Griffin ruled, he had the ability to look at what the SEC was alleging against Mr. Gundlachs and compare it to what Mr. Gundlachs was faulting Mayor Brown for. So let me just give you a couple of examples. First, in the complaint, Mr. Gundlachs asserts that Mayor Brown, and this is the complaint pages A60 to 62, paragraphs 67 to 77. Mr. Gundlachs alleges that Mayor Brown failed to tell him that Ernst & Young founding partners auditors were delaying in the preparation of a required 2007 annual audited financial statement. That's the allegation. Mayor Brown delayed in telling Mr. Gundlachs that the auditors were delaying. Then he makes the legal conclusion, but for Mayor Brown's conduct, the SEC wouldn't have sued me. But if you look at the SEC's allegations, that's supplemental appendix here, it's 57 to 58, paragraphs 44 and 45 of the SEC's allegations against Mr. Gundlachs. The SEC asserts that Mr. Gundlachs told investors that he had audited financial statements for 2007. So think about this. The allegation that he makes in his complaint against Mayor Brown is, you didn't tell me that there was a delay in getting audited financial statements, but the SEC's allegation against him is that he affirmatively misrepresented that he had audited financial statements. He doesn't allege in his complaint that Mayor Brown told him to lie to investors. He acknowledges in his reply brief in this court that he did misrepresent this fact to investors. That's, I believe, at page 10. And when he says that there wasn't intentional misconduct here, he says in his reply brief in this court, he acknowledges that the SEC complaint cites the misrepresentation of the plaintiff of having audited financials as a reason for bringing the action. And then he says, and I quote, However, it was only because defendants, Mayor Brown, failed to inform the plaintiff about Ernst and Young's delay that this misrepresentation was made? We teach our five-year-olds not to lie. You can't blame the lawyer, even if it's accurate to say that the lawyer delayed in telling him something about audited financial statements, to say then, and he doesn't allege this in the Fourth Amendment complaint, he says it in his reply brief, to say then that it was the lawyer's fault that he lied to investors? It's just not the law in this state. He does the same thing repeatedly in his Fourth Amendment complaint. He alleges that Mayor Brown, for example, delayed in getting him notice to send to the Archdiocese of New Orleans to tell the Archdiocese about some rescission requests. That's the allegation. And then he says, but for Mayor Brown's delay, I wouldn't have gotten sued by the SEC. In the SEC complaint against him, the SEC accuses him of lying, they use the word misrepresenting, to the Archdiocese of New Orleans that he had $11 million in rescission requests, when he really had $358 million in rescission requests. It doesn't say, but for Mayor Brown's delays, I wouldn't have told those lies, but that's what this case is about. Excuse me, but doesn't it still feel like when you refer to the complaint in the outside document from the SEC, you're testing the sufficiency of Mr. Gunlich's Fourth Amendment complaint under a 2619 standard? No, Your Honor. What we're saying is the litigation process that we all so deeply believe in requires fairness. And fairness to plaintiffs is to give them four opportunities to amend a complaint, a last warning, and he's had his chance. Fairness to a defendant is to give them notice of what it is that they're accused of doing. And here, every single decision of this Court that talks about the but-for requirement applies to the test that we're talking about, Your Honor. Does this Fourth Amendment complaint set forth facts, facts, not legal conclusions, facts, demonstrating that but for the conduct of these lawyers, I wouldn't have been sued by the SEC? And all you have to do is look at the SEC complaint and match it to his Fourth Amendment complaint, and you see there's no but-for relationship at all, at all. And that's what happened in Clare Associates and many other decisions of this Court. In Clare Associates, for example, if I could just talk about it for one minute, and then I'll rest on our briefs on other issues. In Clare Associates, this Court affirmed dismissal of a legal malpractice complaint. In that case, Clare Associates was asserting that it had a binding loan agreement with Northwestern Mutual. Binding loan agreement. Northwestern Mutual said no. Clare Associates hires George Pontikis and his partners to file a lawsuit against Northwestern Mutual. Okay? Northwestern Mutual makes a motion to dismiss saying, we don't have a binding loan agreement. Clare Associates lawyers fail to respond to the motion to dismiss, fail to show up at the hearing on the motion to dismiss. Dismissal of the underlying matter is ordered. Lawyers fail to file a motion to reconsider. It sounds from the opinion like the lawyers affirmatively lied to their client and said, this case is still pending. No notice of appeal. Malpractice case is filed. There, unlike this case, clear breach of duty. Clear negligence. This court said, in looking at the underlying loan documentation between Northwestern Mutual and Clare Associates, there's no way that this was a binding loan agreement. Therefore, no matter how horrible the conduct of the lawyers in that case, you cannot say that but for their conduct, the plaintiff, Clare Associates, would have prevailed in the underlying matter. And that's the pleading requirement, and that's where the fourth amended complaint fails here. We also propose in our brief an alternative that there's no lawsuit. Please conclude. I'm done. We ask you to please affirm the lower court in total. Thank you. Thank you. Mr. Delaney, this is the only case we have this morning. I'll allow you up to ten minutes. Thank you, Your Honor. Don't push it. I certainly will not, Your Honor. Thank you. Proceed. First, I'm gobsmacked yet again that the defendants in this case are so desperate to get to the bottom of this case. They're asking this court to attempt to subjectively look into Judge Griffin's head as to what he was considering when he reviewed documents. And he's arguing the SEC case. What counsel has done here is illustrated that facts are in existence. He suggests somehow that it is not a proper allegation to suggest a compliance counsel delayed in doing their job. What he fails to talk about is that the attorneys at Mayer, Brown, Rowe, and Maul were hired to do the notices. They were hired to monitor the auditor. They were hired to compile, to draft, and prepare the disclosures pursuant to the SEC regulatory framework, more than pursuant to the SEC regulatory framework, in accordance with the 2007 case they represented William L. Gunlich individually on, and they settled. In that settlement case in 2007, where Mayer, Brown was counsel for the individual, William L. Gunlich, they agreed to terms of a settlement, and they were retained to be compliance counsel from there on. From 2007 to 2009, it was compliance counsel's job to monitor the auditor. It was compliance counsel's job to prepare the annual disclosures. It was compliance counsel's job to notify, just like in re-estate v. Powell, whenever the interests of their client, William L. Gunlich, were at risk. If he was even hinting at the edge of a compliance issue, Mayer, Brown had an affirmative duty to advise him to prepare disclosures and get the notices out to the hundreds of hedge fund investors. This is the case. Counsel went into multiple issues of fact, which are exactly what's before this case, issues of fact. The question as to what they did and when is squired away in the files of Mayer, Brown, Roe, and Maul. No one has seen the light of day on that information, so counsel was stunning. What was the result of their failure to do that? The result was the SEC alleged notice issues with regard, as counsel pointed out, to the archdiocese. The SEC came in on a complaint alleging that Gunlich failed to comply with the 2007 settlement terms. That was the act or omission, and as it has been clearly noted. You're saying that if Mayer, Brown had done their job, they would not have gotten an SEC complaint. Absolutely. Compliance is compliance. If you're compliant, there's nothing to investigate. The notices were prepared and maintained by Mayer, Brown. What was the result of that SEC complaint for not sending out notices? That was the beginning of the 2009 case. That was the end of the relationship between William L. Gunlich and Mayer, Brown. The 2009 case should have never happened. What was the result of the SEC complaint? The result was the consent decree. In 2009? In 2010. Based on not sending out compliance notices? That's what it came down to. And he's calling it lying? What damages resulted from that? Well, it's a complicated case. Well, wait a minute. It may be complicated, but that's the whole point of pleading. I understand, Judge. The whole point of pleadings is to put together the pleadings to say what the problem is and how do we resolve the problem. If it is complicated, it is the pleader's job to un-complicate it. I'm just trying to understand Your Honor's question. If you're asking about the damages in the SEC matter or the damages to William L. Gunlich, that's what I was confused by. Who's the plaintiff? The plaintiff here is William Gunlich. What damages did he suffer as a result of the mail crack? As we sit here today, 100% of his assets are frozen. As we sit here today, Mr. Gunlich has lost his home. As we sit here today, Mr. Gunlich — Is that pledging your complaint? Absolutely, Judge. Absolutely. And if you look at paragraphs 57 through 60, as well as 63 through 65, we highlight all of this. But the key point — Well, I don't think it ever came to a damages issue. Judge Griffin didn't have an issue with damages. Judge Griffin's issue was proximate cause. He felt that we didn't — Damages proximately caused by the negligence of the attorney. That's — But there was never a suggestion in the record that we didn't plead damages. And, Your Honor, I would point out to the Praxier, Inc. case, 235 F. 3rd, which is citing the Supreme Court of Illinois, as well. In the order, the plaintiff only has to show a victory of some sort, even if it is partial. Mr. Gunlich, in this case, lost his company. He lost his home. He lost 100 percent of his assets, himself and his wife. And as we stand here today, we still have Mr. Gunlich under this asset freeze. The other point that counsel is ignoring and hiding from here is, as we articulate in our brief, the receiver has brought a professional services case on behalf of founding partners in Broward County. Those facts in that case is ongoing as we stand here today. So going back to the standard, I think, Judge Liu, you were absolutely correct. Rulich is controlling here that there can be an amendment after a final judgment. So we have not been boxed out from that. I have a question. Certainly, Judge. Going back to what — from the complaint, is Mr. Gunlich alleging that the negligence, the purported negligence, are omissions or negligence related to the 2007 cease and desist order, or there are other aspects of compliance other than the 17A2 violation specifically noted in the cease and desist? In other words, is the SEC complaint in 2009 broader than the 2007 cease and desist order? Is it the same? It's hard to tell from the complaint. That's why we're asking, what are some of the reasons the SEC brought the complaint? Well, it came down to, to simplify the issue, to answer the court, notice. It came down to disclosures of notice. Pursuant to the 2007 settlement agreement, there were heightened disclosure standards that Mr. Gunlich agreed to. He was represented by Mayor Brown, they negotiated the settlement, and they continued the representation after the 2007 case. Those heightened disclosure standards and those notice requirements were what Mayor Brown was engaged to be compliance counsel on. Their job, subsequent to settling the matter, was to ensure compliance with all the heightened requirements that emanated from the 2007 case. That's where their mission to protect the interests of William L. Gunlich's occurred. Throughout that proceeding, thereafter, they had the job of drafting the notices, of doing the annual disclosures, of updating the fund disclosures. This was an ongoing compliance job. Counsel suggests that... You're saying that they didn't do that. Absolutely. They failed to ensure compliance. They failed to advise Mr. Gunlich. And when they didn't do that, what happened? A subsequent investigation occurred, alleging failure to properly do disclosures in accordance with the 2007 settlement. And it was the result of noncompliance. The allegation. Correct. It was the result of them not doing their job. Absolutely. According to you. Absolutely. And because they didn't do their job, you're saying that the SEC then came down on Mr. Gunlich and put him out of business. Correct. And that's his damages. Absolutely. So you're saying you pled all that negligence, failure to act, resulted in inaction, that resulted in damage. I absolutely think in the light most favorable to the plaintiff, the Fourth Amendment complaint has that, and I believe unequivocally the Fifth Amendment complaint has that. And I think that the issue comes back to what counsel and I do agree on is fairness. This is a 2615 motion, Judge. This is the extreme remedy of dismissal with prejudice of a 2615. This is not a simple case. This is a case that the parties acknowledge there is a large elephant in the living room of this hidden file that Mr. Gunlich is denied access to. This file will tell with particularity what they were hired to do, when they were hired to do it, and how they were hired to do it. And yet without that file, you were able to plead a Fifth Amendment complaint that you said cured all the problems that Judge Griffin said he had. Judge, I am eager and happy to stand on one leg and blindfolded to advocate on behalf of my client. This is about fairness and justice. This is furtherance of the interests of justice. This man deserves his day in court. Well, we don't – no one disputes that. But the point is you're saying on the one hand I didn't have the file and therefore my Fourth Amendment complaint, according to Judge Griffin, was deficient. Yet on the other hand, without that file, I'm able to plead a Fifth Amendment complaint that takes care of all the deficiencies Judge Griffin thought I had. Well, the issue we – It's inconsistent. Well, the problem and the error that Judge Griffin made was this heightened particularity standard. The judge asked us to go into additional particularity, which, again, without the file was a difficult standard. I firmly believe as we stand here today that in the light most favorable to the plaintiff, this complaint is sufficient to move forward. It should not have been dismissed with prejudice. If the court in the lower court wanted additional particularity, that's something that we could have gotten had we gotten the file. The issue remains, as the case law is clear, and I'll end on this, Judge. It's – Beecham v. Walker. No set of facts exists. Not only do a set of facts exist, there's a case in Broward County pending right now. We know the facts are in the file. The facts exist. So the question here is fairness. And as Loyola Academy made clear, if this case were to be affirmed, it would be an absurd, unjust, inconvenient result that denies a plaintiff the keys to the courthouse. The factual issues that counsel went so far outside of the record to argue in front of this court prove in and of itself that this case deserves to move forward. And we would ask that this court reverse and remand and allow this case to proceed into discovery so it can move forward. Thank you, sir. Thank you to the attorneys for your excellent argument, your excellent brief briefing. We're taking this case under advisement. Court is adjourned.